[Crim. No. 10285.   Second Dist., Div. Two.   Aug. 25, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. LEE MELVIN JACKSON, JR., Defendant and Appellant.

Lawrence Teplin, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant was found guilty, in a nonjury trial, of violating Penal Code, section 459. He appeals from the judgment.

On February 22, 1964, at approximately 9:30 p.m., several police units acting in response to a radio call, converged on a residence located on Denker Avenue in Los Angeles to inves-

tigate a possible burglary. Officer Irwin, while still one block from the residence, noticed three or four males in the driveway of the house. As Irwin's police car neared the house, he saw appellant walking across the lawn to the sidewalk and observed another man step behind a pillar bordering the driveway. When Irwin and his partner parked their car, they apprehended appellant and the man standing behind the pillar.

The officers noticed several items of personal property on the porch of the house including a suit and a vacuum cleaner. In appellant's pants pocket the officers found various items of men's underclothing and cufflinks later identified as having been taken from the house. Approximately $200 in cash was also taken from the residence. Of this $170 was recovered.

At the time of his apprehension, the officers asked appellant to explain his presence at the house and appellant related that he had been picked up by the other men in their car; that they had then driven around for a while before stopping at the Denker Avenue residence, and that appellant did not know they were going to stop at the house, but that when they did stop, three of the other men entered the house and brought out various items, some of which were given to appellant. Someone then yelled that the police were coming and everyone started running except appellant who, since he had not done anything, merely walked toward the sidewalk.

Two days after his arrest, appellant was interrogated by Officer Broady in an interrogation room at the 77th street police station. Broady asked appellant to tell him what happened the night he was arrested. Broady testified, ''At that time I said, 'Well, tell me everything you did and just start from the beginning.' '' Appellant then confessed that the group of men had gone to the Denker Avenue residence, after first trying a house on another street, for the express purpose of obtaining money; that when they arrived, one of the men found that no one was home and that one of the windows was open, then the men, including appellant, went into the house and rummaged the house. On the way out someone said ''Here come the cops'', and they all fled in different directions.

Officer Broady also testified that he asked Jackson to sign a statement and ''. . . Mr. Jackson says he wasn't signing anything until he talked to his attorney.''

In none of the conversations detailed was appellant advised of his right to counsel or of his right to remain silent.

Appellant contends that his confession to Officer Broady was improperly admitted into evidence. (*People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) *Dorado, supra,* pp. 353, 354, holds that a confession is inadmissible if the following four conditions are present: (1) the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect; (2) the suspect is in custody; (3) the authorities have carried out a process of interrogations that lent itself to eliciting incriminating statements; (4) the authorities have not effectively informed defendant of his right to counsel or of his absolute right to remain silent and no evidence establishes that he had waived these rights.

Respondent contends that on the facts there was no process of interrogation that lent itself to eliciting incriminating statements and that appellant had effectively waived his right to counsel and to remain silent because it may be inferred from his refusal to sign a statement ". . . until he talked to his attorney" that he knew he had such rights. Respondent asserts therefore that conditions three and four required by the *Dorado* rule were not present in the case at bench.

The question put by Officer Broady to appellant in the interrogation room of the 77th street police station two days after the arrest, was at the accusatory stage. This question appears on its face to be reasonable, even though its context contains the same sort of negative pregnant as the classic "Have you stopped beating your wife?"—The specific question "Well, tell me everything you did and just start from the beginning", assumes that appellant did do something. If it were a general question unrelated to a specific time, when a crime had been committed, the assumption he had done something may have been an innocuous one. In the case at bench the question was by a previous question related to the night he was arrested. The evidence showed that appellant was arrested on the night of February 22, with some of the spoils of the crime on his person and immediately incarcerated. At the time of his arrest, and immediately thereafter, he was questioned by Officers Irwin and McClure. Two days thereafter he made the confession hereinbefore detailed

in response to the question put by Officer Broady. In these circumstances it can hardly be inferred logically that Officer Broady was endeavoring to give appellant the opportunity to "clear himself".

We believe that a process of interrogation took place within the definition of *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal. Rptr. 201, 400 P.2d 97], wherein the court said at page 579: "Whatever may be the subjective intent of the interrogators, we must, in order to determine if the police are carrying out 'a process of interrogations that lends itself to eliciting incriminating statements' . . . analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances."

It is clear from the record that appellant knew of his right to counsel. It is not clear that he knew of his right to remain silent. We are mindful of *In re Schlette,* 232 Cal. App.2d 407 [42 Cal.Rptr. 708], wherein the court said at pages 411-412: "Like *Escobedo,* the *Dorado* decision recognizes that the police warning is a superfluity when the suspect already knows his rights. It permits evidentiary use of the incriminating statement where there is a knowing waiver of the right to remain silent and the right to counsel. Thus the majority opinion states: 'In the absence of evidence that defendant already knew that he had a right to counsel during interrogation, the failure of the officers to inform him of that right precludes a finding that he knowingly waived it. . . . Such waiver presupposes knowledge of the right to remain silent; in the absence of evidence of such knowledge, the waiver requires a warning to the accused of that right.' "

There is no showing in the case at bench that appellant knew of his right to remain silent, or was told he had such a right.

Speaking specifically of the confession in *Schlette,* the court says at page 412: "Schlette's confession was not a product of ignorance of his right to silence or of denial of his right to counsel. The evidence, including his own testimony, demonstrates that before and during the interrogation in the sheriff's office . . . he was fully aware of these rights. Their expression in the form of a police warning was thus superfluous. Far from demanding an attorney, Schlette said he didn't want one. He knowingly waived his right to silence and his right to counsel."

The evidence before the court in *Schlette* was clear on the subject of a defendant's knowledge of his right to keep silent.

In the case at bench there is no evidence on this subject, except the inference we are asked to draw from appellant's refusal to sign a statement until he talked to his attorney. We think no such inference is warranted from that admission alone.

Since the record in the case at bench shows a process of interrogation designed to elicit incriminating statements, and a failure to advise on the right to silence, we feel that the introduction of the confession under the circumstances herein detailed, requires reversal of the judgment. (*People* v. *Dorado, supra.*)

The judgment is reversed.

Herndon, J., and Fleming, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 20, 1965.